

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
 ) Case No. 25-mj-00106-BJC
**Blue Huawei Cell Phone** )
**Seized as FP&F No. 2024565800007005** )
**("Target Device 4")** )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A-4, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Title 8, U.S.C. § 1324(a)(1)(A)(ii) Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent James T. Burns, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

U.S. Border Patrol Agent James T. Burns
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 09/13/2024

*Judge's signature*

City and state: San Diego, California    HON. BENJAMIN J. CHEEKS, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A-4

PROPERTY TO BE SEARCHED

The following property is to be searched:

Blue Huawei Cell Phone
Seized as FP&F No. 2024565800007005
(**"Target Device 4"**)

**Target Device 4** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1, A-2, A-3, and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **August 17, 2024, through August 31, 2024**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage Device, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.

# AFFIDAVIT

I, James T. Burns, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> Black and Silver T-Mobile Cell Phone
> Seized as FP&F No. 2024565800007002
> **("Target Device 1")**
>
> Black and Orange Telcel Cell Phone
> Seized as FP&F No. 2024565800007003
> **("Target Device 2")**
>
> Blue Apple iPhone
> Seized as FP&F No. 2024565800007004
> **("Target Device 3")**
>
> Blue Huawei Cell Phone
> Seized as FP&F No. 2024565800007005
> **("Target Device 4")**

Collectively, the **Target Devices**, as further described in Attachment A-1, A-2, A-3, and A-4 and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant related to the investigation and prosecution of Ricardo LOPEZ Espinoza and Julio Cesar SUAREZ Rojas, for attempting to transport and move illegal aliens Jerso Isau GRAMAJO-Mazariegos, Hernan Elionai REYES-Cifuentes and Mario Amilcar REYES Rodas (collectively, the "Material Witnesses") within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

1

3.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4.  I have been employed by the USBP since 2008 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for 16 years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.  My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6.  During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have

2

resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

4

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On August 31, 2024, Supervisory Border Patrol Agent R. Cerdenola and Supervisory Border Patrol Agent A. Galioto are assigned to the San Diego Regional Coordinating Mechanism and the Marine Task Force. Agent Cerdenola and Agent Galioto were patrolling the area of Mission Bay known as Quivira Basin in San Diego, California.

12. At approximately 11:49 AM, Agent Cerdenola informed agents that he had just observed a 22' Wellcraft boat arrive at the fuel dock in Quivira Basin. The boat then dropped off four individuals, those four individuals then met up with a fifth individual who had been waiting for them. Agent Cerdenola observed the boat quickly leave without refueling and the five individuals began leaving the dock. Agent Cerdenola quickly stopped the five individuals, identified himself as a United States Border Patrol Agent, and conducted an immigration inspection. All five individuals, including one later identified as defendant, Julio Cesar SUAREZ Rojas, and three later identified as material witnesses, Jerso Isau GRAMAJO-Mazariegos, Hernan Elionai REYES-Cifuentes, and Mario Amilcar REYES Rodas, stated that they are citizens of Mexico and had no authorization to be in

5

the United States legally. It was later determined that GRAMAJO, REYES-Cifuentes, and REYES Rodas, were citizens of Guatemala. At approximately 11:50 AM, Agent Cerdenola placed all five individuals, including SUAREZ, GRAMAJO, REYES-Cifuentes and REYES Rodas, under arrest.

13. Agent Cerdenola asked SUAREZ, who was the individual waiting for the other four, if he had the keys to his vehicle. SUAREZ handed Agent Cerdenola a key fob to a silver Ford Fusion. The silver Ford Fusion was parked in the lot adjacent to the fuel docks and approximately 20 yards away from where SUAREZ was observed waiting.

14. Agent Galioto observed the boat and the boat operator, later identified as Ricardo LOPEZ-Espinoza, return to the fuel dock. LOPEZ drove the boat further into the Quivira Basin. Agent Galioto attempted to parallel the direction of the boat on foot near the loading docks. Minutes later, Agent Galioto observed the boat abandoned at the docks and not in a designated boat slip. As Agent Galioto approached the boat, bystanders pointed up the docks and informed Agent Galioto the direction the boat operator went. Agent Galioto then observed LOPEZ standing on the docks and approached him. Agent Galioto observed LOPEZ throw his cellphone and wallet into the water. At approximately 12:10 PM, Agent Galioto placed LOPEZ under arrest for alien smuggling.

15. At the time of arrest, **Target Device 1** was found on SUAREZ, **Target Device 2** was found on REYES-Cifuentes, **Target Device 3** was found on REYES-Rodas, and **Target Device 4** was found on GRAMAJO-Mazariegos. The **Target Devices** were subsequently seized.

16. Defendant, Julio Cesar SUAREZ Rojas, was read his Miranda rights and agreed to speak and answer questions without an attorney present. SUAREZ admitted to being in the area to pick up the four undocumented aliens that disembarked the boat at the Quivira Basin fuel dock. SUAREZ stated that he made arrangements to be a load driver with the same person that smuggled him into the United States. SUAREZ stated that he was going to get paid $1,000 USD to pick up the undocumented aliens.

17.     Material witnesses, Jerso GRAMAJO-Mazariegos, Hernan REYES-Cifuentes and Mario REYES Rodas, each stated they are citizens of Guatemala without any immigration documents that would allow them to enter or remain in the United States legally. GRAMAJO and REYES-Cifuentes each stated they made arrangements to pay $2000 USD to be smuggled into the United States. REYES-Cifuentes was able to identify LOPEZ as the boat operator in a photo lineup.

18.     Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant and Material Witness were using the **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **August 17, 2024**, through **August 31, 2024.**

## METHODOLOGY

19.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the devices are subscribed, and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data

7

contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of these warrants, a case agent familiar with the investigation will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

21. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

22. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

## CONCLUSION

23. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of an alien smuggling violation of Title 8, United States Code, Sections 1324.

24. Because the **Target Devices** were seized at the time of material witnesses arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **August 17, 2024, through August 31, 2024.**

25. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item described in Attachment A-1, A-2, A-3, and A-4 to seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
James T. Burns
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 13th day of September 2024.

_____
HON. BENJAMIN J. CHEEKS
United States Magistrate Judge

9